UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK S. KAHN, as
Trustee of the MARK S.
KAHN SECOND AMENDED AND
RESTATED TRUST AGREEMENT
u/a/d DECEMBER 18, 1996 and
KAHN FAMILY, LLC,

                      Plaintiffs,

vs.

GARY RAN, TIM REAL ESTATE
MEZZANINE FUND I, LLC, TIM
REAL ESTATE MEZZANINE ADVISORS,
LLC, TELEMUS CAPITAL PARTNERS, LLC,
TELEMUS INVESTMENT MANAGEMENT, LLC,

                      Defendants.

Case No. 08-CV-14417

HON. GEORGE CARAM STEEH

_____/

<u>ORDER DENYING IN PART DEFENDANTS' MOTION TO DISMISS</u>

       This securities fraud action arises out of plaintiffs' investment of a total of

$847,000 in the TIM Fund.  The TIM Fund was organized to make a loan on a revolving

line of credit in the maximum amount of $9 million with a five year maturity ("the Loan")

to Biltmore Financial, LLC ("Biltmore Financial"), an entity that is wholly owned by

Biltmore Properties Corporation ("Biltmore Properties").  Plaintiffs allege that their

investment advisor, Gary Ran ("Ran"), made oral representations that the loan would be

secured by collateral that would have a value of at least three times the outstanding

principal balance of the Loan, but that these assertions were false.  Plaintiffs further

allege that defendants failed to disclose that the Biltmore Properties and its affiliated

entities were in the midst of a financial crisis, could not obtain financing elsewhere, and that the $9 million Loan was to be used to pay off other lenders rather than to develop and sell residential properties.      Now before the Court is defendants' motion to dismiss.  Defendants argue that they are entitled to dismissal of the securities fraud and related state law claims because plaintiffs' could not rely on Ran's oral representations when these were contradicted by the Offering Memorandum which identified the TIM Fund as a high risk investment, plaintiffs allegedly fail to plead the fraud claims with sufficient particularity, and plaintiffs cannot group all of the defendants together but must show fraud specific to each defendant.  Oral argument was heard on March 30, 2009. For the reasons set forth below, defendants' motion to dismiss shall be denied except to the extent that plaintiffs agree to withdraw Count III as to all defendants except the TIM Fund.

BACKGROUND

A.    <u>The Parties</u>

Plaintiffs are Mark Kahn as trustee of the Mark S. Kahn Second Amended and Restated Trust Agreement.  Kahn is a resident of California.  Plaintiff Kahn Family, L.L.C. is a Michigan limited liability company with its principal place of business in California.

Defendants are investment advisor Gary Ran, TIM Real Estate Mezzanine Fund I, LLC ("TIM Fund"), TIM Real Estate Mezzanine Advisors, LLC ("TIM Advisors"), Telemus Capital Partners, LLC ("Telemus Capital"), and Telemus Investment Management, LLC ("Telemus Management").  TIM Advisors is an entity fully owned by Telemus Capital.  Ran is the sole manager of TIM Advisors, the chief executive officer

2

or manager of Telemus Management, and chairman and chief executive officer of its

parent company, Telemus Capital.

B.    The Complaint

        Plaintiff has brought a seven-count Complaint against defendants sounding in

federal securities law and Michigan securities law and state law tort claims.  The seven

counts are as follows: (I)  violation of § 10(b) of the Securities and Exchange Act of

1934 ("the Securities and Exchange Act") and Rule 10b-5 against all defendants; (II)

violation of § 20(a) of the Securities and Exchange Act against Ran, TIM Advisors and

Telemus Capital; (III) violation of the Michigan Uniform Securities Act, MCLA §

451.810(a)(2) against all defendants; (IV) violation of Michigan Uniform Securities Act,

MCLA § 451.810(b) against  Ran, TIM Advisors and Telemus Capital; (V) silent fraud

against all defendants; (VI) actual fraud against all defendants, and (VII) negligent

misrepresentation against all defendants.

C.    The Underlying Investment

        In early 2006, Ran approached the plaintiffs and recommended that they invest

in a fund that he was creating known as the TIM Fund.  The TIM Fund was created to

make a loan on a revolving line of credit up to $9 million to a newly created entity which

would advance monies to various real estate entities owned or controlled by Ran's

family ("Biltmore Entities").  Plaintiffs allege that Ran told them that the investment was

low risk because the collateral had a value of three times the amount of the $9 million

Loan, in other words, collateral worth $27 million.  The Offering Memorandum also

stated that the collateral for the $9 million Loan would at all times be three times the

outstanding principal of the loan.  Plaintiffs allege that this representation was false and

that, in fact, the stated collateral was nowhere near $27 million and the Biltmore Entities were in financial crisis already at the time of the offering.  Plaintiffs also allege that the Offering Memorandum guaranteed that the collateral would continue to maintain a three to one ratio and if there was a decline in the collateral, the TIM Fund had the right to require additional collateral.  Plaintiffs invested $847,000 in the TIM Fund in February and June, 2006.  (Complaint, ¶ 24).

In addition to alleged false representations made by Ran orally and contained in the Offering Memorandum, plaintiffs also allege that a July 5th, 2006 letter was also fraudulent.  The July 5th letter was sent to plaintiffs by Steven Greenwald, President of TIM Advisors and President and Chief Operating Officer of Telemus Capital.  The July 5th letter stated that he had reviewed the underlying collateral, including a physical examination of a number of properties, and found that they satisfied the formula that the collateral be valued at three times the outstanding loan amount.  After receiving the July 5th letter, plaintiffs invested an additional $205,333.33 in the TIM Fund.  (Complaint, ¶ 29).

Four months later, on November 22, 2006, TIM Advisors sent plaintiffs a letter stating that the collateral was insufficient, Biltmore Entities' financial position was deteriorating, and the Biltmore Entities were in default with Comerica Bank and others.

Plaintiffs allege that defendants should have disclosed the following facts: (1) the Biltmore Entities were in severe financial difficulty, (2) the Biltmore Entities should have disclosed that unlike prior years where they had sold upwards of 1,500 homes, they expected to sell only 50 in 2006, (3) the Biltmore Entities' financial condition was so distressed that they could not obtain financing from institutional lenders or banks and

4

were already in default on some of their loans, (4) the proceeds of the $9 million Loan were not being used for working capital purposes but instead, to pay off lenders, and (5) although the Offering Memorandum disclosed that defendants were not obtaining new appraisals on the property from which the cash flows securing the $9 million Loan were generated, it did not disclose that defendants had failed to perform due diligence of the Biltmore Entities' financial condition.

Plaintiffs plead that Ran knew of the Biltmore Entities' precarious financial position because he is a close family member to the principals of the Biltmore Entities. He is the nephew of Bernard Stollman and the first cousin of David Stollman, both of whom are Guarantors of the Loan. Plaintiffs also plead that Ran's parents and/or siblings made substantial investments in Biltmore Properties and that his insider status gave him actual knowledge regarding the poor financial condition of Biltmore Properties. Even if Ran did not know that the statements and oral representations were materially false and misleading, plaintiffs plead that defendants acted recklessly because they failed to perform due diligence with respect to the TIM Fund.

D.    Defendants' Motion to Dismiss

    1.    Federal Securities Claims

Defendants move to dismiss the federal securities claims on the grounds that (1) plaintiffs cannot show reasonable reliance because plaintiffs' allegations are contradicted by the Offering Memorandum, (2) plaintiffs fail to plead the alleged misrepresentations and omissions with sufficient particularity, (3) plaintiffs fail to plead scienter with sufficient particularity, (4) plaintiffs fail to plead loss causation, and (5) plaintiffs' claims are barred by the safe-harbor provision in the Private Securities

5

Litigation Reform Act, 15 U.S.C. Sec. 78u-5 ("PSLRA").[1]

2.    State Law Claims

Defendants also move to dismiss: (1) the Michigan Uniform Securities Act claims (Counts III and IV) on the grounds that plaintiffs fail to plead with sufficient particularity and the alleged misrepresentations supporting these claims are contradicted by the written disclosures;  (2) the silent fraud claim (Count V) for plaintiffs' alleged failure to plead all of the elements; (3) the actual fraud claim (Count VI) for plaintiffs' alleged failure to plead with specificity; and, (4) the negligent misrepresentation claim (Count VII) for their failure to distinguish among defendants.

STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's recent articulation of the Rule 12(b)(6) standard in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.   To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Bell Atlantic, 127 S. Ct. at 1964-65) (citations and quotations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual

_____

[1]Defendants withdrew their claim that the federal securities claims were time-barred upon the discovery that there was no basis for such a defense.

6

allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Id. (citing Bell Atlantic, 127 S. Ct. at 1965).

ANALYSIS

I.    Federal Securities Claims

        In order to state a claim for violations of Section 10(b) of the Securities and Exchange Act and Rule 10b-5, plaintiffs must allege that in connection with the purchase or sale of securities, (1) a misstatement or omission of material fact, (2) made with scienter, (3) upon which plaintiffs' justifiably relied, and (4) which proximately caused plaintiffs' damages.  Zaluski v. United Amer. Healthcare Corp., 527 F.3d 564, 571 (6th Cir. 2008) (citations omitted).  In pleading a claim for securities fraud, the plaintiffs must meet the heightened pleading standard set forth in the PSLRA, which requires that plaintiffs "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).

A.    Reasonable Reliance

        Defendants argue that plaintiffs federal securities claims (Counts I and II) must be dismissed because plaintiffs cannot show reasonable reliance because of disclosures made in the Offering Memorandum and Subscription Agreement.   The Offering Memorandum is incorporated into the Complaint by reference (Complaint, ¶ 23), but the Subscription Agreement is not.  Since this Court is addressing a motion to dismiss, the Court cannot consider matters outside the pleadings, so the Court will limit

7

its analysis to consideration of the Offering Memorandum and will not consider the

Subscription Agreement.  Specifically, the Offering Memorandum provides:

> AN INVESTMENT IN THE COMPANY INVOLVES A HIGH DEGREE OF
> RISK AND INVESTORS SHOULD NOT INVEST ANY FUNDS UNLESS
> THEY CAN AFFORD TO LOSE THEIR ENTIRE INVESTMENT.

(Doc. 16, Ex. A at 2).  Defendants also rely on the following language in the Offering

Memorandum:

> The Company is not obtaining new appraisals, title policies or specific
> information as to liens and encumbrances on any of the properties, nor is
> the Company performing any other due diligence in respect of any
> property generating the cash flows pledged to secure the Loan.  While the
> Company has the right to monitor the collateral and require additional or
> substitute collateral, there is no assurance that the value of the collateral
> as determined pursuant to the formula [as set forth in the Loan
> Documents] will approximate the fair market value of the collateral or will
> prove sufficient to protect the Company in the event of a default.  In
> addition, there is no assurance that additional or substitute collateral will
> be available to secure the Loan.

(Doc. 16, Ex. A at 20).  Defendants also rely on representations set forth in the Offering

Memorandum disclosing (1) that the collateral for the Loan was pledged cash flows

(rather than property which would be subject to foreclosure), (2) that the value of the

collateral was solely determined pursuant to a formula set forth in the Loan Documents,

(3) that the formula would not guarantee that the value of the collateral would

approximate fair market value or that it would be sufficient to protect the company in the

event of default, and (4) that there was no assurance that additional or substitute

collateral would be available to secure the Loan.

In support of their argument that disclosures in the Offering Memorandum defeat

plaintiffs' claim of justifiable reliance, defendants rely on Harner v. Prudential Sec. Inc.,

785 F. Supp. 626 (E.D. Mich. 1992), aff'd, 35 F.3d 565 (6th Cir. 1994) (table only).  In

8

that case, plaintiffs alleged that defendants were liable for securities fraud where, knowing that the aircraft market was very bad, defendants promised favorable returns on limited partnership units. Id. at 640. Judge Rosen dismissed plaintiffs' securities fraud claim, finding no reasonable reliance, where the Prospectus discussed the depressed state of the aircraft market and cautioned that there were no guarantees that the demand for aircraft would improve and cautioned that the investment involved a high degree of risk. Id. at 640-41.

In the instant case, plaintiffs argue that Harner is distinguishable because the fraud in that case involved only plaintiff's reliance on positive predictions about the anticipated recovery of the aircraft market. Id. at 641. By contrast, plaintiffs argue that the fraud here was not simply positive predictions about the real estate market but defendants allegedly misled plaintiffs into believing that the $9 million Loan was secure by failing to disclose the fact that the Biltmore Entities were in financial crisis and could not obtain financing from any other source, were going to use the $9 million to repay other lenders, and lacked collateral anywhere near a value of $27 million.

As an initial matter, plaintiffs claim that the question of reasonable reliance is a question of fact for the jury to decide and is not appropriate for determination pursuant to a motion to dismiss. In support of this claim, plaintiffs rely on Bass v. Janney Montgomery Scott, Inc. 210 F.3d 577, 590 (6th Cir. 2000) where the Sixth Circuit, in addressing a motion for judgment as a matter of law, rejected defendants' argument that it could not be liable for fraud based on Tennessee law that parties of equal bargaining power are not justified in relying upon representations of the other where the means of knowledge was within his reach. Id. The Sixth Circuit found that the question

9

of reliance was for the trier of fact. Id. That case appears distinguishable as the question of reliance in that case required the factual analysis of whether the parties were on equal footing and whether or not the plaintiff had the means of uncovering the alleged misrepresentations. Here the question is much simpler: it is merely whether the Offering Memorandum sufficiently disclosed the risks involved in the investment so that any reliance on oral or written representations to the contrary were unjustified. Plaintiffs also argue that where the fraud claim is premised on the omission of material facts, the element of reliance is presumed. Molecular Tech. Corp. v. Valentine, 925 F.2d 910, 918 (6th Cir. 1991) (reliance presumed for purposes of securities fraud in case of omission or nondisclosure of material facts). Defendants have not rebutted this assertion.

Plaintiffs further argue that even if this Court does address the reliance question in considering defendants' motion to dismiss, they have sufficiently pled reasonable reliance because any of the statements defendants rely upon in the Offering Memorandum are simply generalized disclaimers. In order for the disclaimers to negate a finding of reasonable reliance, the disclaimers are generally enforceable only where they specifically address the content of the misrepresentations alleged. See Caiola v. Citibank, N.A., 295 F.3d 312, 330 (2d Cir. 2002). Plaintiffs allege that nothing in the Offering Memorandum reveals that the Biltmore Entities were in a financial crisis at the time that the Loan was made, did not put investors on notice that the initial value of the collateral was not three times the outstanding principal balance of the Loan, and did not negate the July 5th letter stating that there was a "high level" of collateral securing the $9 million Loan. In fact, the Offering Memorandum specifically states that "[t]he Loan

10

documents provide that the collateral will have a "value" of at least three times the outstanding principal balance of the Loan."  (Doc. 16, Ex. A at 9).

Plaintiffs maintain that the closest the Offering Memorandum comes to dispelling the omissions and misrepresentations alleged is the statement that there is no guarantee that the formula used to value the collateral "will approximate the fair market value of the collateral or will prove sufficient to protect the Company in the event of default." (Id. at 20).  As plaintiffs point out, however, even this disclosure does not negate the misrepresentations alleged as it addresses future valuations of the collateral only.

In sum, plaintiffs have sufficiently pled reasonable reliance.

B.      Sufficient Particularity

Defendants argue that they are entitled to dismissal of the federal securities claims (Counts I and II) because plaintiffs have failed to plead the alleged misrepresentations with sufficient particularity.  Securities fraud claims arising under §10(b) must satisfy the particularity requirements of Fed. R. Civ. P. 9(b).  PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 682 (6th Cir. 2004).  In order to satisfy the requirement of Rule 9(b), plaintiffs' complaint must "(1) specify the statements that the plaintiff[s] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Frank v. Dana Corp.,547 F.3d 564, 570 (6th Cir. 2008) (quotations omitted).  "At a minimum, Plaintiffs must allege the time, place and contents of the misrepresentations upon which they relied."  Id. (citations omitted).  Defendants argue that plaintiffs only allege that Ran made a statement that the TIM Fund was "low risk" in early 2006 and claim that this is

11

insufficient to satisfy the Rule 9(b) requirement that plaintiffs identify when, where and how the statement was made.   As to Ran's statement, plaintiffs contend it is enough that they allege that the statement was made in early 2006, prior to their February investment, as there is no requirement that plaintiff plead the exact date of the misrepresentation but only when the statement "generally occurred."  Advisors Capital Invest., Inc. v. Cumberland Cas. & Sur. Co., 2006 WL 1428490 at *2 (M.D. Fla. 2006), see also Burman v. Phoenix Worldwide Indus., Inc., 384 F. Supp. 2d 316, 328 (D.D.C. 2005) (pleading approximate dates satisfies Rule 9(b)); Benedict v. Cooperstock, 23 F. Supp. 2d 754, 765 (E.D. Mich. 1998) (exact dates not needed where plaintiffs lack access to exact dates and information regarding alleged fraud is within defendant's control).

Plaintiffs also argue that they have sufficiently pled the omissions in Paragraph 37 of the Complaint, where they allege, inter alia, that defendants failed to disclose that the Biltmore Properties were experiencing severe financial difficulties at the time the Loan was made, the Biltmore Properties' financial position was so precarious that no banks or institutional lenders would make them loans, the Biltmore Properties only anticipated selling 50 residential lots in 2006 when in prior years they had sold over 1,500 lots, and the collateral did not have a value of three times the principal balance of the loan.  Plaintiffs' fraudulent securities case is based on omissions and it is, of course, impossible to plead the exact time that a material fact should have been disclosed but was not.  In an omissions case, Rule 9(b) is met where the plaintiff pleads with particularity the statements that the omitted information rendered misleading.  In re Campbell Soup Co. Sec. Litig., 145 F. Supp. 2d 574, 589 (D.N.J. 2001) (an omission is

properly pled under Rule 9(b) as long as "misleading statements and the context in which they were made" are pled with particularity). Plaintiffs have done so here.

Defendants further allege that plaintiffs have failed to allege any facts to substantiate the basis for their claim that defendants' written representations regarding the TIM Fund were misleading because the proceeds of the Loan were "used by Biltmore Properties and its affiliated entities to pay other lenders and for other non-working capital needs." Plaintiffs respond that the Complaint pleads that the Biltmore Entities were in default with other lenders. (Complaint, ¶ 37(i)). Moreover, plaintiffs allege that the only logical explanation for the fact that the Borrower was in default to the TIM Fund within months of the $9 million Loan being made is that the Biltmore Entities used the $9 million to pay off other lenders.

Defendants also allege that plaintiffs have improperly "group pled" their claims for violations of the securities laws. Defendants note that plaintiffs have attributed all of the alleged misrepresentations and omissions collectively to all of the defendants. Defendants assert that group pleading fails to meet the specificity requirements of the PSLRA. The PSLRA imposes even more stringent particularity requirements than Rule 9(b). The PSLRA requires that any private securities complaint alleging that the defendant made a false or misleading statement must:

> (1) . . . specify each statement alleged to have been misleading, the reason or reasons why the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed [and]

> (2) . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(1) (2); <u>Frank</u>, 547 F.3d at 570. "At a minimum, plaintiffs must

13

allege the time, place and contents of the misrepresentations upon which they relied."
Frank, 547 F.3d at 570 (citations omitted).  Plaintiffs respond that even where group
pleading is not permitted, it only applies to individuals, not to multiple entities controlled
by the same individual as is the case here.  See In re Enron Corp. Sec., Derivative &
ERISA Litig., 2005 WL 3504860 at *8 n.18 (S.D. Tex. 2005).  Even if group pleading is
not allowed, plaintiffs claim to have identified where the misleading statements
appeared (i.e. the Offering Memorandum and the July 5th letter), and who was the
author of each of the alleged misleading statements (TIM Fund issued the Offering
Memorandum and the July 5th letter was sent by an officer of TIM Advisors and TIM
Management).  Plaintiffs have pled their fraud claim with sufficient particularity.

C.     Scienter

Defendants also seek dismissal of plaintiffs' security fraud claims on the basis
that plaintiffs have failed to plead scienter as required under the PSLRA.  The PLSRA
amendments to the Securities and Exchange Act require that:

> In any private action arising under this chapter in which the plaintiff may
> recover money damages on proof that the defendant acted with a
> particular state of mind, the complaint shall, with respect to each act or
> omission alleged to violate this chapter, state with particularity facts giving
> rise to a strong inference that the defendant acted with the required state
> of mind.

15 U.S.C. § 78u-4(b)(2).  The Supreme Court recently addressed the question of what
is required of plaintiffs to plead scienter sufficiently to survive a motion to dismiss.
Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2449  (2007).   In
Tellabs, the Supreme Court ruled that plaintiffs adequately plead scienter to survive a
motion to dismiss so long as "a reasonable person would deem the inference of scienter

14

cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 2510.  The inference of scienter "must be cogent and compelling, thus strong in light of other explanations." Id.  In Frank, the Sixth Circuit explained that "where two equally compelling inferences can be drawn, one demonstrating scienter and the other supporting a nonculpable explanation, Tellabs instructs that the complaint should be permitted to move forward."  547 F.3d at 571.

Having stated the law for determining whether scienter is adequately pled to survive a motion to dismiss, the next step is to apply the law to the allegations of the Complaint.  The Complaint alleges that defendants knew or should have known that the statements were materially misleading because Ran is a close family member to the principals of the Biltmore Entities and his parents and/or siblings made substantial investments in Biltmore Entities and thus, his "insider status" gave him actual knowledge regarding the poor financial condition of the Biltmore Entities.  (Complaint, ¶ ¶ 38-40).  The Complaint further alleges that Ran and the Telemus defendants were motivated to commit securities fraud by their receipt of a $300,000 placement fee as well as service fees going forward.  (Complaint, ¶ 43).  In the alternative, the Complaint alleges that defendants acted recklessly because they failed to perform "adequate" due diligence.  (Complaint, ¶ 41(b)).

Defendants argue that plaintiffs have only pleaded that Ran had the motive and opportunity to make materially misleading statements, and that motive and opportunity are not enough to establish scienter.  In support of this argument, defendants rely on In re Comshare, Inc. Sec. Lit.,183 F.3d 542 (6th Cir. 1999) where plaintiffs alleged scienter based on allegations that defendant officers and directors stood to profit if the stocks

were sold at inflated prices.  Id. at 553.  The Sixth Circuit found that while plaintiffs had pleaded that defendants had the motive and opportunity to commit securities fraud, this did not "give rise to a strong inference that Defendants acted with recklessness."  Id. Finding that plaintiffs failed to adequately plead scienter, the Sixth Circuit affirmed the dismissal of plaintiffs' security fraud claims.  Id.  Comshare does not stand for the general proposition that pleading motive and opportunity alone are never enough to adequately state a claim for scienter but is limited to its facts.

Even prior to the Supreme Court's ruling in Tellabs which eased plaintiffs' burden for pleading scienter, the Sixth Circuit ruled that "facts presenting motive and opportunity may be of enough weight to state a claim under the PSLRA" depending on the circumstances of each case.  Helwig v. Vencor, 251 F.3d 540, 551 (6th Cir. 2001). Although after Tellabs, the standard of law set forth in Helwig is no longer good law because the standard for pleading scienter is now less onerous, the Sixth Circuit's observance in that case that determining "recklessness in securities fraud is an untidy, case-by-case concept" still rings true.  Id. at 551.

Here, it is possible that a "reasonable person" would deem Ran's close familial ties to the investors of the Biltmore Entities sufficient to show that he knew of the Biltmore Entities' precarious financial position, at the time he solicited plaintiffs to invest in the TIM Fund, "at least as compelling" as any other inference that could be drawn. Accordingly, plaintiffs have sufficiently pled scienter, in accordance with the Supreme Court's holding in Tellabs, to survive defendants' motion to dismiss.  Plaintiffs persuasively point out that whether Ran had actual knowledge of the problems at the Biltmore Entities remains a question of fact not appropriate for a motion to dismiss.

16

Even if Ran's familial ties are not sufficient to give rise to scienter, plaintiffs allege that they have properly pled scienter by alleging that defendants failed to perform "any" due diligence on the Biltmore Entities prior to recommending the investment to plaintiffs and prior to making statements to plaintiffs about the TIM Fund.  Plaintiffs cite to numerous district court cases finding scienter where defendants failed to conduct any due diligence.  Plaintiffs allege that scienter may be inferred from the fact that defendants sent plaintiffs a July 5th letter boasting of a "high level" of collateral, but four months later, in November, 2006, there was no collateral.  Defendants respond that the Complaint does not allege that defendants did not perform "any" due diligence, only that they failed to perform "adequate" due diligence.  (Complaint, ¶ 41(b)).  Defendants contend that allegations that they should have performed more due diligence does not support a strong inference of recklessness.  Having carefully considered the arguments presented, given the alleged lack of collateral in November, 2006, plaintiffs have sufficiently pled scienter to survive defendants' motion to dismiss.  Plaintiffs persuasively point out that without discovery they cannot plead scienter with any greater particularity as it is the defendants who control their knowledge of the Biltmore Entities alleged precarious financial position and their due diligence efforts.

Defendants also argue that plaintiffs improperly use group pleading with respect to their allegations of scienter but that the PSLRA requires that scienter be pleaded separately as to each defendant.  Plaintiffs respond that the group pleading doctrine only precludes the grouping of individuals not entities.  Plaintiffs allege that Ran controlled each of the entities and acted with scienter, thus scienter is imputed to all defendants.  In support of this proposition, plaintiffs cite <u>SEC v. Treadway</u>, 430 F. Supp.

17

2d 293, 337 (S.D.N.Y. 2006) where the district court noted that it is a matter of settled

law that the scienter of executives may be imputed to corporate entities.  Under this

rationale, plaintiffs' allegations of securities fraud as to Ran may be imputed to the

entities he allegedly controlled.  Moreover, plaintiffs' allegations of misrepresentations

are not limited solely to those statements made by Ran.  In addition to Ran's alleged

misrepresentations made on behalf of Telemus Management, plaintiffs also rely on

alleged misrepresentations set forth in Greenwald's July 5, 2006 letter which Greenwald

made in his capacity as President of TIM Advisors and President and Chief Operating

Officer of Telemus Capital.  (Complaint, ¶ 25-28).  Based on these independent

allegations, plaintiffs do not seek to rely solely on Ran's alleged misrepresentations to

support their securities fraud claims.

D.      Loss Causation

        Defendants argue that plaintiffs cannot establish "loss causation" because they

cannot establish that the decline in their investment was caused by the alleged

misrepresentations but rather, the decline was caused by the depressed real estate

market.  Defendants assert that plaintiffs have failed to show a causal link between the

alleged misrepresentations and the decline in value of the plaintiffs' investment in the

TIM Fund.  See Dura Pharm. v. Broudo, 544 U.S. 336 (2005).  Defendants claim that

loss causation can only be shown if the misrepresentation is the reason for the

investment's decline.  In support of this argument, defendants rely on an unpublished

opinion of the Sixth Circuit.  Campbell v. Shearson/Amer. Exp. Inc., 1987 WL 44742 at

*2 (6th Cir. 1987).  Plaintiffs, on the other hand, claim that they need only show that but

for the misrepresentations they would not have invested in the TIM Fund.  In support of

18

this assertion, plaintiffs rely on an unpublished opinion of the Northern District of Illinois. Lieblang v. Crown Media Holdings, Inc., 2008 WL 320470 at *6 (N.D. Ill. 2008).

The PSLRA provides that plaintiffs must prove that defendants' misrepresentations "caused the loss for which the plaintiff seeks to recover." 15 U.S.C. § 78u-4(b)(4).  In D.E. & J Ltd. Part. v. Conaway, 284 F. Supp. 2d 719 (E.D. Mich. 2003), aff'd, 133 Fed. App'x 994 (6th Cir. 2005), Judge Rosen conducted a thorough analysis of causation in a securities fraud action.  In Conaway, Judge Rosen explained that there are two types of causation to be proved in a § 10(b) and Rule 10b-5 case: transactional loss and loss causation.  Id. at 747.  "Transactional loss" is what plaintiffs allege here: that but for the misrepresentation they would not have invested in the TIM Fund.  Id.  "Loss causation," on the other hand, is what defendants assert that plaintiffs must prove: "that the untruth was in some reasonably direct, or proximate, way responsible for his loss."  Id. (quotations omitted).  In Conaway, the "loss causation" required the "plaintiff to point to some causal link between the alleged misrepresentations and a concrete decline in the value of the plaintiff's stock."  Id. at 748.  Judge Rosen explains that while the Sixth Circuit has only ruled on the question of "loss causation" in the unpublished Campbell decision, that holding is in conformity with the holdings of the Second, Third, Fourth, Fifth, Seventh and Eleventh Circuits.  Id. at 749, n.24.

Defendants have properly stated the law that plaintiffs must allege something more than that they made a bad investment but must plead that there is a causal link between the misrepresentations and their economic loss.  Despite understating their burden of pleading loss causation, plaintiffs have met the heightened pleading

19

requirement under the PLSRA.  Plaintiffs do not allege that the TIM Fund declined in value over time, but that it was always a bad investment, and that defendants' representations to the contrary were fraudulent.  Defendants mischaracterize plaintiffs' theory of the case when they suggest that plaintiffs allege that the loss in value of the investment was caused by a decline in the housing market.  Plaintiffs did not so plead.

E.     Safe-Harbor Provision of the PSLRA

The PSLRA provides a safe-harbor provision that protects companies from liability when they issue "forward-looking" statements couched in meaningful cautionary language.  15 U.S.C. § 78u-5(c)(1).  The PSLRA defines "forward looking statements" broadly including, but not limited to projections of future financial results, statements of plans and objectives for future operations and statements of future economic performance.  15 U.S.C. § 78-5(i).  Defendants argue that all statements made in the Offering Memorandum are protected by the safe-harbor provision.  Plaintiffs, on the other hand, argue that they are seeking to recover based on statements of existing facts: namely (1) the Biltmore Entities were in financial crisis, and (2) the collateral for the $9 million Loan never equaled three times the principal amount outstanding on the loan.  (Complaint, ¶ 37).

In their reply brief, defendants contend that plaintiffs statement in the Complaint that "Biltmore Properties and its affiliated entities only anticipated selling 50 residential lots in 2006" (Complaint, ¶ 37(c)) is a forward looking statement entitled to the protection of the safe harbor provision.  Defendants misconstrue the allegation which is not a forward looking statement that was communicated to the plaintiffs at all, but rather is an alleged omission of material fact.  Plaintiffs contend that the Biltmore Properties

20

failed to disclose their intention to sell significantly less residential properties in 2006. Such a non-disclosure of alleged material fact does not fall under the rubric of the safe harbor provision.

II.    Michigan Claims

A.    Michigan Uniform Securities Act (Counts III and IV)

Count III alleges violations of the Michigan Uniform Securities Act ("MUSA"), MCLA § 451.810(a)(2) against all defendants.  Defendants argue that only TIM Fund may be liable under § 451.810(a) as that section only applies to the person who directly offered or sold the security at issue.  Plaintiffs concede this point and agree to withdraw the claim (Count III) as to all defendants except the TIM Fund.

Defendants claim that the allegations of security fraud fail to satisfy the specificity requirements of Rule 9(b).  For the same reasons discussed earlier in this order, plaintiffs have met the specificity requirements of Rule 9(b) sufficient to survive defendants' motion to dismiss.

Defendants claim that plaintiffs' § 451.810(b) claim (Count IV) must be dismissed because MUSA only applies to persons "who directly or indirectly control a seller liable under subsection (a)."  Plaintiffs, however, have sufficiently pleaded that these defendants are liable under § 451.810(b) as the Complaint alleges that TIM Advisors managed the TIM Fund (Complaint, ¶ 56), Ran is the manager of TIM Advisors (Id., ¶ 8) and TIM Advisors is wholly owned by Telemus Capital (Id., ¶ 5) which also owns Telemus Management.  (Id., ¶ 6).

B.    Silent Fraud (Count V)

In order to prove silent fraud, plaintiffs must show that defendants failed to

21

divulge a fact that defendants had an affirmative duty to disclose. <u>Chires v. Cumulus Broadcasting, LLC</u>, 543 F. Supp. 2d 712, 721 (E.D. Mich. 2008) (citations omitted). Defendants argue that they had no legal duty to disclose certain information that allegedly was not disclosed and plaintiffs' claim is asserted generally against all defendants.

Plaintiffs respond that Ran, through Telemus Management, was plaintiffs' investment advisor and thus, had a fiduciary duty to disclose all material facts. Moreover, the Complaint alleges that the remaining defendants, TIM Fund, TIM Advisors and Telemus Capital had a fiduciary duty to make disclosures as TIM Fund issued the Offering Memorandum and TIM Advisors and Telemus Capital issued the July 5th letter. Plaintiffs contend that those making statements regarding a securities offering must disclose all material information necessary so that the statements are not misleading. <u>See</u> <u>Craftmatic Sec. Litig. v. Kraftsow</u>, 890 F.2d 628, 641 (3rd Cir. 1989). Based on these allegations, plaintiffs' silent fraud claim survives dismissal.

C.    <u>Actual Fraud (Count VI)</u>

Defendants argue that this Court should dismiss Count VI, actual fraud, because plaintiffs have allegedly failed to plead the claim with the specificity required by Rule 9(b). For the reasons discussed above with respect to plaintiffs' federal securities claims, plaintiffs' actual fraud claim meets the strictures of Rule 9(b) and survives defendants' motion to dismiss.

D.    <u>Negligent Misrepresentation (Count VII)</u>

In order to state a claim for negligent misrepresentation, plaintiffs must plead "that a party justifiably relied to his detriment on information prepared without

22

reasonable care by one who owed the relying party a duty of care." Fejedelem v. Kasco, 269 Mich. App. 499, 502 (2006) (quoting Mable Cleary Trust v. Edward-Marlah Muzyl Trust, 262 Mich. App. 485, 502 (2004) and Law Offices of Lawrence J Stockler, PC v. Rose, 174 Mich. App. 14, 30 (1989)).  Defendants claim that plaintiffs have failed to plead that defendants owed plaintiffs a duty or that they breached that duty.  For the same reasons discussed with respect to plaintiffs' silent fraud claim, plaintiffs have adequately pleaded the existence of an affirmative duty owed by the defendants not to misrepresent or withhold certain information.

Defendants also claim that plaintiffs fail to identify which defendants made the alleged misrepresentations.  Plaintiffs respond that they do identify which defendants made the statements.  Specifically, the Complaint identifies Ran as the maker of the misleading statements regarding the TIM Fund, when on behalf of Telemus Management, he recommended that plaintiffs invest in the TIM Fund.  (Complaint, ¶ 22).  The Complaint also alleges that an officer of TIM Advisors and of Telemus Capital, sent the July 5th letter to plaintiffs.  (Id. at ¶ 25).  Finally, the Complaint alleges that misleading statements were contained in the Offering Memorandum issued by the TIM Fund.  (Complaint, ¶ 23).  Given these pleading statements, plaintiffs have sufficiently identified the makers of the alleged misrepresentations.

CONCLUSION

For the reasons discussed above, defendants' motion to dismiss (Doc. 16) hereby is DENIED except to the extent that plaintiffs agree to withdraw Count III as to all defendants except the TIM Fund, those defendants (Ran, TIM Advisors, Telemus

23

Capital and Telemus Management) hereby are DISMISSED from Count III only.

Dated:  April 27, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 27, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk